In re the alleged will of ROSE DOUGHERTY, deceased.

[May 20th, 1925.]

Wills—Establishment of, and Probate—Will Established and Admitted in Orphans Court—Upon Appeal, Subsequent to Original Hearing, Copy was Found in Surrogate's Office in Substantial but Somewhat Different Language—Testimony in Prerogative Court, As Well As Court Below, Leaves No Doubt of Existence of Will and Decree of Probate Will Be Affirmed, Subject to Modification to the Extent it Differs From the Copy Produced Here.

On appeal from the Mercer orphans court. On final hearing.

*Mr. James J. McGoogan,* for the appellants.

*Messrs. Geraghty & Weelans.* for the respondent.

BUCHANAN, V. C.

The appellants, being certain of the heirs-at-law of decedent, seek reversal of the decree of the orphans court of February 29th, 1924, establishing and admitting to probate the will of Rose Dougherty, deceased. Proofs were taken in this court in addition to the evidence before the orphans court.

It must be admitted that there are certain discrepancies and contradictions in the testimony, but if this were not so (as to testimony of witnesses regarding occurrences of twenty

years ago), it would be so surprising as to cause the gravest doubt of the truth of the testimony. Upon all the evidence I am entirely convinced, beyond reasonable doubt, that Rose Dougherty duly executed her last will and testament on March 5th, 1901, in the form hereinafter mentioned, that that will was not revoked by testatrix prior to her death a few months later; that it has become lost since her death, and that it should be established and admitted to probate.

A copy of this will was found by the deputy surrogate of Mercer county in the files of the surrogate's office subsequent to the original hearing in this court. It reads as follows:

"I, Rose Dougherty, of the city of Trenton, in the county of Mercer and State of New Jersey, of sound and disposing mind and memory, make and publish this, my last will and testimony, as follows, to wit:

"*First.* I direct that all my just debts and funeral expenses be paid as soon as convenient after my death.

"*Second.* I give, bequeath and devise all those three houses and lots known as numbers 390, 392 and 394 Union street, Trenton, to my niece, Margaret A. Carles, absolutely, her heirs and assigns forever, on condition that the said Margaret A. Carles provide, maintain and care for my husband, Robert M. Dougherty, during his natural life.

"*Third.* I give, bequeath and devise all the rest and residue of my real and personal estate to my niece, Margaret A. Carles, her heirs and assigns forever.

"*Fourth.* I hereby nominate, constitute and appoint my niece, Margaret A. Carles, sole executrix of this my last will and testament.

"In witness whereof, I have hereunto set my hand and seal this fifth day of March, in the year of our Lord one thousand nine hundred and one.

her

"ROSE  X  DOUGHERTY.   [L. S.]

mark

"Signed, sealed, published and declared by the above testatrix, as and for her last will and testament, who. in our presence, and at her request, and in the presence of each other, have hereunto subscribed our names as witnesses.

"HYMAN LEVIE, Trenton, N. J.
"MARTIN P. DEVLIN, Trenton, N. J."

The will as established in and by the decree in the orphans court was somewhat different in language (although substantially the same as to its provisions), and, to that extent, the decree below must be modified.

Rose Dougherty in 1901 was well advanced in years and in serious ill-health; as I have said, she died a few months later. Her family consisted of her husband (who died a little while after she did); a niece, Margaret Carles (the proponent), who had been practically, though not legally, adopted by the Doughertys at the age of two years, and who was then about thirty, and John P. Carles, proponent's husband.

The Doughertys had accumulated a little property, consisting principally of three houses on Union street, in one of which they lived. They had no children, except the foster daughter, Margaret Carles, whose efforts and earnings had contributed to the acquisition of the property.

The houses stood in the name of the husband, Robert Dougherty. Two years earlier he had made a will, by the terms of which he left all his estate to his wife, and after his wife's death to "my adopted daughter, Margaret Carles, her heirs and assigns forever." There was some fear that some of Robert Dougherty's relatives might make trouble for Mrs. Carles after his death, and, accordingly, in March, 1901, the properties were conveyed by Robert Dougherty and his wife to Margaret Carles, and then by Mrs. Carles and her husband to Mrs. Dougherty. These deeds are dated March 2d, 1901, and March 4th, 1901, and were followed by the will in question, dated March 5th, 1901.

Three witnesses testify to the execution of the will by Mrs. Dougherty, under the supervision of Mr. Martin P. Devlin, a well-known member of the Mercer county bar of the highest standing. These witnesses are Mrs. Carles, her husband, and a neighbor, Hyman Levie. The testimony also is that the will was drawn by Mr. Devlin, in long hand, and that after the execution it was taken by him to be lodged with the surrogate.

Mr. Devlin has no recollection of the matter whatever, although he identified the deeds of conveyance as having been drawn by him and executed in his presence, because of his signature thereon. He denied that he had ever drawn the will in the language thereof as testified to by Mrs. Carles in the

orphans court (because of certain phraseology). He also felt quite sure that he had not drawn a will in long hand, because he said he never did that except in an emergency, and then always substituted a typewritten one afterwards, if possible. He also felt quite sure that he had never lodged any will with the surrogate's office for safekeeping prior to the testator's death, although he mentioned another instance where other parties were positive that he had done so.

Testifying subsequently to the discovery, and his reading of the copy of the will, Mr. Devlin said that the language was his, except that the attestation clause was a little different from the phraseology he used. On the whole, he could not say that the will as set forth in the copy had not been drawn by him—he rather believed that it was the language of a will drawn by him. He did not, however, change his testimony as to long-hand drawing, or lodging with the surrogate.

In view of this subsequent testimony of Mr. Devlin, and in view of the fact that the will was a part of a series of instruments, all at apparently one time, of which the two deeds which he admittedly drew were the prior part; in view of the relationship between the Doughertys and proponent, and the facts and the contents of the earlier will of the husband, and in view of the testimony of the witness Hyman Levie, who has no interest in the suit; never had any interest in the matter; was only a neighbor called in for the sole and express purpose of witnessing Mrs. Dougherty's will, which is the only will he ever witnessed—in view of all this there can be no doubt whatever that a will drawn by Mr. Devlin was signed by Mrs. Dougherty at that time, under the supervision of Mr. Devlin.

The contents of the will are made certain by the copy. That this is, in fact, a copy of the will so drawn and executed I can have no doubt under all the circumstances. The testimony is that Mr. Devlin was directed to take the will to the surrogate's office, agreed to do so, and took it from the house with him. Mr. Levie's testimony corroborates this. Mr. Devlin does not think he ever lodged a will for safekeeping

with the surrogate, but it must be remembered that this was twenty years ago, and early in Mr. Devlin's practice. I myself cannot recall, and do not believe, that I ever lodged a will with the surrogate during my practice, but I should not care to swear positively that I had never done so. In any event the copy is in Mr. Devlin's language, and it is perfectly certain, from the testimony of Mr. Titus, that the copy was made by the surrogate's office from what was an apparently authentic will, and *after* the death of Mrs. Dougherty. The carefulness, accuracy and dependability of Mr. Titus are so well known to every member of the Mercer county bar as to need no added comment. The correction of the word "death" is to my mind strongly corroborative of the testimony that the original will was in longhand, and that the will was written by Mr. Devlin in longhand, at the house, and, therefore, under embarrassment to him, would explain the slip made in the formulary of the attestation clause.

That the will was duly executed I have no doubt, not only from the testimony of the other witnesses, but from that of Mr. Devlin, who says that, although he has no recollection of the execution, he is certain (and, knowing Mr. Devlin, I am likewise certain) that it was executed in the requisite legal manner. That is was executed under his supervision has already been shown. The testimony as to its being witnessed by Mr. Carles is sufficiently explained by the fact that Mr. Carles was called to sign; that he did not actually sign was probably due to the fact that he could only make his mark. The error in the testimony in this behalf was not material, especially after all these years. He had signed the deeds at about the same time; he had also signed as witness to the earlier will of Mr. Dougherty.

That the will was never revoked is certain from the fact that it was in the surrogate's office *after* the death of Mrs. Dougherty, and the corroborative evidence of Mrs. Scullin (testifying against the financial interest of her own children) as to the statements of Mrs. Dougherty three or four days before her death; also the evidence from the conduct of Mrs.

Carles (who believed that no further proceeding was necessary in regard to the property and has acted as owner all these years), and the inaction during all the same time of all the heirs-at-law of Mrs. Dougherty, who live in Trenton or vicinity, and took no step to assert any claim to the property until the fact of the non-probate of the will was discovered a year or two ago.

Decree will be advised accordingly.